UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH NUBLA and HENRY KU

Defendant.

Case No. 21-cr-00139-RS-1

**ORDER DENYING MOTION FOR SEVERANCE, MOTION TO DISMISS THE INDICTMENT, AND MOTION FOR LEAVE TO ISSUE SUBPOENAS**

Defendants Joseph Nubla and Henry Ku were indicted in an alleged conspiracy to commit tax fraud. Pending here are three pretrial motions: Nubla has moved to sever his trial from that of his codefendant and to dismiss the indictment, while the Government seeks leave to issue Rule 17(c) subpoenas before trial. For the reasons discussed below, all three motions are denied.

## I. BACKGROUND

Joseph Nubla and Henry Ku are former business partners: according to the Superseding Indictment, Nubla served as the president of Brisbane Recycling Company, Inc. ("Brisbane"), a "rock crushing business," while Ku served as Brisbane's corporate counsel. *See* Dkt. 14 ("Super. Indict.") ¶ 4. The Government avers that, from March 2009 to March 2015, Nubla and Ku engaged in a conspiracy to commit tax fraud, wherein Nubla "directed that checks from Brisbane, totaling approximately $18,378,343," be paid to two companies controlled by Ku in order to conceal Nubla's income from the Internal Revenue Service ("IRS"). *Id.* ¶ 6. Ku then "returned approximately $11,871,817 of the Brisbane monies to Nubla by transfers to Nubla's personal bank

account, cashier checks to purchase real properties for Nubla, and a fake loan" in the amount of $7

million. *Id.* ¶ 7 (capitalization omitted); *see id.* ¶¶ 16–19. The Government further claims Nubla

and Ku cast these exchanges as legitimate business transactions for the purpose of inflating the

cost of Brisbane's business expenses and facilitating false business deductions claimed on

Brisbane's federal corporate income tax returns. *See id.* ¶ 8.

Nubla and Ku were indicted by a federal grand jury on April 6, 2021, on one count of

conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. The grand jury also

returned an indictment against Nubla individually for one count of tax evasion, in violation of 26

U.S.C. § 7201. A superseding indictment was filed on June 1, 2021, and both defendants

subsequently entered pleas of not guilty to their respective charges. Nubla and the Government

have each filed pretrial motions, discussed below, and trial is scheduled to begin in February 2023.

## II. MOTION FOR SEVERANCE

Nubla moves to sever his trial from Defendant Ku's trial on the grounds that trying them

together would substantially prejudice Nubla. This potential prejudice largely stems from Ku's

decision to represent himself in this case. As a result, Nubla contends "the jury will face the

impossible task not only of compartmentalizing the evidence against each defendant, but also

separating and considering in isolation — and only for select purposes — their impression of Mr.

Ku" in his roles as a co-conspirator, Nubla's former lawyer and business partner, a potential

witness, and a courtroom advocate. Dkt. 75, at 5–6. This latter role could be particularly

prejudicial, Nubla claims: for instance, Ku could have the "bizarre opportunity" to cross-examine

Nubla directly should he decide to take the stand, *id.* at 6, and more broadly, the jury could

subconsciously consider Ku's statements and conduct as an advocate when weighing Nubla's guilt

or innocence. Thus, Ku's participation in the trial "will have the quality and characteristics of

testimony . . . and yet would not be subject to cross-examination by Mr. Nubla." Dkt. 89, at 5. The

"mental gymnastics" the jury would have to undertake to follow the Court's limiting instructions

would ultimately be too much, and thus severance is warranted. *Id.* Separate trials would also not

unduly burden the Court, Nubla suggests, since there are only a few live witnesses who would be

1  required to testify at each trial. Any inefficiencies that do occur would be outweighed by the

2  prejudice to Nubla in trying the two defendants together.

3  There is no denying that the situation here — wherein a defendant, who is also an attorney,

4  is charged as a co-conspirator *and* chooses to proceed *pro se* in their joint criminal trial — is

5  highly unusual. It in fact appears to be a case of first impression in the Ninth Circuit, with only a

6  few more-or-less analogous cases on record in other federal courts. The starting point, however, is

7  the same as in any other motion for severance under Rule 14(a), which provides that a court may

8  sever defendants' trials if joinder "appears to prejudice a defendant or the government." Fed. R.

9  Crim. P. 14(a). "There is a preference in the federal system for joint trials of defendants who are

10  indicted together," *Zafiro v. United States*, 506. U.S. 534, 537 (1993), and thus the defendant

11  seeking severance has the burden "to make a strong showing of prejudice" that "outweighs the

12  dominant concern with judicial economy," *United States v. Kenny*, 645 F.2d 1323, 1345 (9th Cir.

13  1981). Ninth Circuit courts examine four criteria in evaluating motions for severance:

14  > (1) whether the jury may reasonably be expected to collate and
15  > appraise the individual evidence against each defendant; (2) the
16  > judge's diligence in instructing the jury on the limited purposes for
   > which certain evidence may be used; (3) whether the nature of the
16  > evidence and the legal concepts involved are within the competence
   > of the ordinary juror; and (4) whether [the moving party] could show,
17  > with some particularity, a risk that the joint trial would compromise a
   > specific trial right of one of the defendants, or prevent the jury from
18  > making a reliable judgment about guilt or innocence.

19  *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008) (quoting *United States*

20  *v. Sullivan*, 522 F.3d 967, 982 n.9 (9th Cir. 2008)).

21  It's easy to understand why Nubla would want to avoid this unusual trial arrangement. At

22  the same time, severance is an uncommon remedy — not simply because of some mechanical

23  impulse by courts to maximize judicial efficiency, but also because joint trials "serve the interests

24  of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 503 U.S. at 537

25  (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). Thus, many of the cases granting

26  severance, including those cited by the parties here, involve significant, concrete risks that a joint

27  trial would present. In *United States v. Shkreli*, for instance, Martin Shkreli and his outside

28

United States District Court
Northern District of California

ORDER DENYING PRETRIAL MOTIONS
CASE NO. 21-cr-00139-RS-1

United States District Court
Northern District of California

1  counsel, Evan Greebel, were indicted on several counts alleging a conspiracy to commit fraud. *See*

2  260 F. Supp. 3d 247, 250–52 (E.D.N.Y. 2017). The Eastern District of New York determined that

3  severance was necessary to preserve Shkreli's right to a fair trial because Greebel's counsel had

4  indicated they would act as "a second prosecutor against Shkreli." *Id.* at 256. Additionally, the

5  court noted that the defendants "expect[ed] to raise frequent objections during the trial . . . leading

6  to a litany of side bar debates about various legal issues," which would inevitably "disrupt the

7  flow of trial and increase the length of trial" and "confuse the jury in what is already a complex

8  case." *Id.* Severance was therefore warranted, both "from a trial management perspective and to

9  prevent substantial prejudice and jury confusion." *Id.* at 257.

10  None of these concrete risks are present here. Ku has not suggested that he intends to act as

11  a "second prosecutor," and the defendants together have not suggested that trial will be disrupted

12  by frequent objections or legal argument. Nor is this a case in which the codefendants wish to

13  present mutually exclusive defenses, *see United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir.

14  1999); where the evidence mounted against each defendant is "linked by just a bare thread,"

15  *United States v. Makras*, No. 21-cr-00402-RS, at 6, ECF No. 36 (N.D. Cal. Jan. 4, 2022); or where

16  exculpatory evidence as to Nubla must be excluded due to Ku's participation, *see Belshaw v.*

17  *Prosper*, No. CV 09-1496 DSF (JC), 2014 WL 1307559, at *33 (C.D. Cal. Mar. 31, 2014).

18  These situations are, of course, non-exhaustive examples, and the decision to sever is left

19  entirely in the Court's discretion. Here, severance does not appear warranted. Nubla's motion

20  largely speculates as to how Ku will act, and how the jury will respond in turn. Indeed, many such

21  concerns occur every time a codefendant makes the inadvisable decision to proceed *pro se*. To the

22  extent the jury must separate what Ku says in the courtroom from the evidence against him and

23  Nubla, this is not uncommon: juries are nearly always instructed not to consider attorney argument

24  as evidence. Further, if the jury is asked to compartmentalize their own impressions of Ku from

25  Nubla's views of Ku, *see* Dkt. 75, at 6, this is not altogether dissimilar from situations where juries

26  must separate their own views of a testifying defendant from those held by witnesses about the

27  same defendant. True, this case presents a "unique combination" of these kinds of circumstances,

28

1   Dkt. 89, at 2, but these are situations the Court can navigate by using careful limiting instructions

2   and trusting the jury will follow them. *See United States v. Escalante*, 637 F.2d 1197, 1202 (9th

3   Cir. 1980). Now that the issue has been raised, trial can proceed with a keen awareness, by the

4   Court and the parties, of the need to manage the courtroom carefully and minimize any prejudice

5   against both Nubla and Ku.

6         In summary, while this trial arrangement may admittedly not be ideal for Nubla, it does not

7   rise to the level of "manifest prejudice" such that his right to a fair trial will be abridged. *See*

8   *United States v. Rosenthal*, No. 19-cr-00217-RS, 2022 WL 1028703, at *4 n.2. It similarly does

9   not outweigh the interest in promoting judicial efficiency: severance would require impaneling and

10  instructing a second jury, presenting the same documentary evidence twice, and requiring live

11  witnesses (even if only a few) to attend two separate trials — possibly to the detriment of

12  whichever defendant is tried second. *See* Dkt. 81, at 2. The motion is therefore denied.

13                 **III. MOTION TO DISMISS THE INDICTMENT**

14        Nubla also brings a motion to dismiss the superseding indictment for failing adequately to

15  inform him of the charges against him. He first argues that the superseding indictment contains

16  two internally inconsistent allegations: (1) the conspiracy charge states that Nubla and Ku engaged

17  in a conspiracy to defraud the United States "[f]rom on or about December 24, 2008, and

18  continuing until April 18, 2016," but it also states that one overt act of the conspiracy was Nubla

19  filing a false 2015 tax return "[o]n or about June 20, 2016," Super. Indict. ¶¶ 1, 24 (emphasis

20  added); and (2) the conspiracy charge states Nubla filed a false 2014 tax return "[o]n or about

21  April 25, 2015," but the tax evasion charge states that Nubla filed the same tax return "in [sic] or

22  about April 15, 2015," *id.* ¶¶ 23, 26 (emphasis added). The Government concedes that these were

23  errors: the indictment should have stated "April 18" in paragraph 24, not "June 20," because April

24  18 was the date the IRS considered the tax return to have been filed (even if the return was

25  actually filed two months later); and "April 25," in paragraph 23, was "an obvious typo." Dkt. 84,

26  at 6. As a result, the Government seeks to amend the indictment to correct these errors. Nubla

27  argues that while the latter may have been a typo, the former "is unequivocally not." Dkt. 91, at 3.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6

The misstatement in paragraph 23 seems plausibly to be a typo, but the discrepancy between the dates stated in paragraphs 1 and 24 is a more glaring mistake, and one that clearly confused Nubla. While the exchange of briefs on this motion, along with the discovery process, appear to have clarified the reason for this discrepancy such that Nubla will not have been prejudiced by it, the Government is ordered to file a bill of particulars as to the alleged events relating to April 18, 2016, and June 20, 2016. No amendment to the indictment is necessary.

7
8
9
10
11
12
13

Nubla also contends the superseding indictment failed to state specifically the basis for the allegations that he formed an agreement with Ku to defraud the United States and that he had the requisite intent to commit tax evasion. This argument is unpersuasive. The indictment adequately alleges the theory of the Government's case, and the Government's recent discovery disclosures should continue to elucidate this, making a bill of particulars addressing these issues unnecessary. *See United States v. Giese*, 597 F.2d 1170, 1180–81 (9th Cir. 1979). Defendant's motion is therefore denied.[1]

14

### IV. MOTION FOR LEAVE TO ISSUE SUBPOENAS

15
16
17
18
19
20
21
22

For its part, the Government seeks leave to issue subpoenas before trial under Rule 17(c). Specifically, it seeks nonprivileged communications between Brisbane and Ku, and between the law firm Meyers Nave APC and Ku, concerning (1) the alleged $7 million fake loan issued by Ku to Nubla, (2) any contemplated lawsuits by Brisbane against Ku, and (3) any settlement agreements between Brisbane and Ku and the companies under his control.[2] *See* Dkt. 78, Attachs. 1, 2. The Government argues these subpoenas are necessary in light of "the specter of [an] advice of counsel defense being raised" by Nubla at trial. Dkt. 78, at 3. Nubla responds by arguing that issuing the subpoenas now would be premature, as he has not stated his intention to rely on that

23
24
25
26
27

[1] Nubla's request that the Court order the Government to produce a copy of the IRS Special Agent Report with the "Willfulness" section unredacted is denied, without prejudice.

[2] It is unusual for the Government to seek information using Rule 17(c) subpoenas, but it is neither unprecedented nor prohibited. *See United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (per curiam); *United States v. Lusby*, No. 18-cr-00136-APG-PAL, 2018 WL 9816061, at *1–2 (D. Nev. Aug. 3, 2018).

28

ORDER DENYING PRETRIAL MOTIONS
CASE NO. 21-cr-00139-RS-1

defense. Nubla concedes raising the defense would require waiver of his attorney-client privilege, and he notes that any decision to rely on the defense will "be disclosed to the Court and to the government within a reasonable time so as to not cause delays during trial." Dkt. 82, at 11.

The communications the Government seeks appear relevant only to the extent Nubla chooses to rely on an advice-of-counsel defense. As such, issuing the subpoenas would be premature at this juncture. However, the Government's argument that it needs to be notified in advance of Nubla's intention to invoke the defense is well taken. To that end, Nubla is ordered to notify the Government at least two weeks in advance of trial whether he intends to rely on an advice-of-counsel defense. *See United States v. Dallmann*, 433 F. Supp. 3d 804, 812 (E.D. Va. 2020). If he intends to do so, the Government may renew its motion to seek Rule 17(c) subpoenas, and the Court will review that request expeditiously. Nubla and Defendant Ku are hereby put on notice that they will be expected to comply with any such subpoenas and facilitate the efficient and timely transfer of any relevant information within their control. The motion is therefore denied, without prejudice.[3]

## V. CONCLUSION

Nubla's motion for severance is denied. His motion to dismiss the indictment is similarly denied, but the Government is ordered to provide a bill of particulars as discussed above. The Government's motion to issue Rule 17(c) subpoenas is denied, without prejudice to renewal as discussed above. Nubla is ordered to notify the Government at least two weeks in advance of trial whether he intends to rely on an advice-of-counsel defense

**IT IS SO ORDERED**.

---

[3] Defendant, in his opposition to the Government's motion, requested that the Court strike a reference to an attorney employed by Mayers Nave in the opening paragraph of the Government's motion. *See* Dkt. 82, at 11–12. To avoid potential prejudice to this unindicted third party, and since the party's name appears irrelevant to the motion itself, that request is granted and the Government is directed to file a copy of its original motion with the attorney's name redacted.

Dated: November 10, 2022

RICHARD SEEBORG
Chief United States District Judge