1

2

3

4

5

6

7              UNITED STATES DISTRICT COURT

8             NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,              Case No.  21-cr-00139-RS

             Plaintiff,

11

         v.

12                                          ORDER ON GOVERNMENT'S
                                            MOTIONS *IN LIMINE*
13   JOSEPH NUBLA and HENRY KU,

             Defendants.

14

15

16          The government has filed nine motions *in limine* ("MILs"). *See* Dkt. 109. This order

17   summarizes the rulings on these motions, which may be revised at trial. *See City of Pomona v. SQM*

18   *N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

19        **1.  MIL No. 1: Defendants' and Companies' Tax Returns**

20          The government moves *in limine* for the admission of tax returns filed by Nubla, Ku, and

21   Brisbane Recycling Company, Inc. ("Brisbane"). It argues these documents are non-hearsay, as they

22   are not intended to be offered for their truth. Alternatively, the government asserts they are admissible

23   as statements of a party-opponent and/or as statements of co-conspirators. Nubla opposes the motion

24   only insofar as it seeks to permit the government to rely on tax returns filed after April 18, 2016, i.e.,

25   after the timeframe identified in the Superseding Indictment. Ku appears not to oppose the motion, but

26   only on the condition that the government waives objections to three documents. *See* Dkt. 125.[1]

27   _____

28   [1] Any decision on the admissibility of the three documents listed by Ku will be based on those

United States District Court
Northern District of California

United States District Court
Northern District of California

1   The motion is granted to the extent the government seeks to offer tax returns filed during the

2   indictment period, i.e., for tax years 2009 through 2015. The admissibility of Nubla's tax returns for

3   subsequent tax years is discussed below in connection with MIL No. 4.

4   **2.   MIL No. 2: Defendants' and Companies' Bank Records**

5   The government moves *in limine* to admit the bank records of Nubla, Ku, and their companies.

6   Nubla does not oppose the motion on authentication or hearsay grounds, but notes that he wishes to

7   retain his right to object to the documents under Federal Rules of Evidence 401 and 403. As with MIL

8   No. 1, Ku appears not to oppose the motion, but again only on the condition that the government

9   waives any objections to three documents. *See* Dkt. 125.[2]

10  The motion is granted, with the understanding that neither Defendant has waived their right to

11  object to the admission of these documents under Rules 401 or 403.

12  **3.   MIL No. 3: Evidence Obtained via Search Warrant**

13  The government moves *in limine* for the admission of electronic records obtained pursuant to a

14  2018 search warrant. Specifically, these records include entries from Brisbane's QuickBooks

15  accounting files. Nubla is "inclined not to object to the authenticity of QuickBooks Accounting entries

16  that were timely produced and identified as exhibits by the government," Dkt. 117, at 12 (footnote

17  omitted), but seeks clarification as to the otherwise "breathtaking" scope of the motion.

18  The motion is granted as to the identified QuickBooks accounting entries, though Defendants

19  retain the right to object under Rules 401, 403, or other bases. The motion is otherwise denied, as the

20  government is nonspecific about what other electronic records it seeks to have admitted into evidence.

21  Any objections to these other records may be addressed at trial.

22  **4.   MIL No. 4: Evidence of "Disguised Dividends"**

23  The government next moves *in limine* for the admission of Nubla's and Brisbane's tax returns

24  for tax years 2016 through 2021. While these tax returns clearly fall outside of the time periods

25  _____

26  documents — not as a "condition" for the admission of any other documents.

27  [2] *See supra* fn. 1.

28

United States District Court
Northern District of California

identified in the Superseding Indictment, the government contends that these returns are admissible as "other acts" that demonstrate Nubla's "knowledge and willful intent in scheming the tax laws to avoid paying Brisbane's corporate taxes." Dkt. 109, at 7 (citing Fed. R. Evid. 404(b)). This is because, according to the government, these tax returns evidence a series of "disguised dividends," wherein Nubla's personal salary was dramatically increased in a direct effort to lower Brisbane's taxable income, thus "avoid[ing] paying corporate taxes in addition to personal taxes." *Id.* at 5. The government alleges this practice began in tax year 2015 as a way of employing a new tax evasion strategy once the government's investigation into Brisbane and the defendants had begun. Nubla, in turn, argues that the government has not shown that this evidence meets Rule 404(b)'s requirements for admission, and that it is instead being proffered as improper character evidence. Further, Nubla argues that, even if Rule 404(b)'s requirements were met here, the evidence should be excluded under Rule 403.

a. Legal Standard

Rule 404(b) permits a district court to admit evidence of "any other crime, wrong, or act" for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Ninth Circuit has repeatedly characterized Rule 404(b) as "a rule of inclusion — not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc); *accord United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020). Such "other act" evidence may be admitted if it satisfies four requirements:

> (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

*United States v. Flores-Blanco*, 623 F.3d 912, 919 (9th Cir. 2010) (quoting *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994)). It is the government's burden to establish that the evidence meets each of these requirements. *See United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (citing *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993)). If all four requirements are met, "the court must then decide whether the probative value is substantially outweighed by the prejudicial

impact under Rule 403." *Id.* (quoting *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002)).

While this framework is typically applied to evidence of prior acts, the Ninth Circuit has made clear that "evidence of subsequent crimes or acts of misconduct is admissible if it is relevant to an issue at trial." *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991). *United States v. Ayers* provides an instructive example. There, the defendants were charged with tax evasion, and the government sought to admit testimony that, subsequent to the indictment period, one of the defendants had enlisted a woman to carry a suitcase with roughly $10,000 in cash to Miami, and that the defendant had "submitted a false customs declaration" regarding how much cash he was carrying on a separate return trip to the United States. 924 F.2d at 1472. The district court allowed in the evidence under Rule 404(b), and the Ninth Circuit affirmed, holding that the subsequent acts met all four requirements for admission. First, the evidence was introduced to prove a material issue, namely the defendant's "intent to defraud the United States by concealing income to evade the payment of taxes." *Id.* at 1474. Second, the acts occurred within two years of the indictment period. Third, the evidence was sufficient to prove that the defendant committed the acts. Fourth, the acts were "similar to [the defendant's] conduct during the conspiracy," in that they were "also acts which conceal[ed] the ownership of cash from the government." *Id.* Finally, the prejudicial impact of the evidence was tempered by the district court's "careful exclusion" of any evidence which would infer the cash transfers were part of a drug trafficking operation, and by its limiting instruction stating that the evidence was "admitted solely to prove intent." *Id.*

        b.  Discussion

The government contends that all four 404(b) requirements are met here, and that the tax returns are not unduly prejudicial to warrant exclusion under Rule 403. Nubla argues that the evidence should be excluded under Rule 403 and that the government fails to demonstrate that three of the 404(b) requirements are met. Nubla does not appear to attack the second 404(b) requirement — that the acts not be "too remote in time" from the offenses charged — and, given that the tax returns are directly subsequent to the indictment period, this requirement is met. *See Ayers*, 924 F.2d at 1474. As discussed below, the tax returns also meet the other three 404(b) requirements — materiality,

United States District Court<br>Northern District of California

sufficiency, and similarity — and they need not be excluded under Rule 403.

The parties first dispute whether the tax returns "tend to prove a material point." As the government sees it, this evidence is "highly probative" of Nubla's "knowledge, intent, and lack of mistake." Dkt. 109, at 9. This is because using a "disguised dividend" after the indictment period reveals an intent to evade paying corporate taxes, albeit using a different strategy. Nubla, meanwhile, argues that this theory is "entirely conclusory," because the only thing the tax returns alone show "is that Nubla was paid more in compensation in those years and paid more in personal taxes in those years." Dkt. 117, at 6. Nubla thus does not appear to dispute the authenticity of the tax returns, nor what they show directly. His objection is focused on the conclusion the government draws: that the increased compensation constitutes a series of (illegal) disguised dividends.

Nubla is correct that classifying any compensation as a disguised dividend is more complex than simply showing that a corporation's payment of an employee's wages increased, even dramatically. Indeed, the Ninth Circuit employs a five-factor test to determine whether such increased payments are reasonable, and thus not disguised dividends. *See LabelGraphics, Inc. v. Comm'r*, 221 F.3d 1091, 1095 (9th Cir. 2000) (citing *Elliotts, Inc. v. Comm'r*, 716 F.2d 1241, 1245 (9th Cir. 1983)). However, the government need not conclusively show that Nubla's increased wages (and the corresponding drop in Brisbane's taxable income) can be properly characterized as disguised dividends under the *Elliotts* test. Neither Ninth Circuit case law nor the language of Rule 404(b) require the proffered evidence to show conclusively a crime or other actionable misconduct. *See* Fed. R. Evid. 404(b) ( "any other crime, wrong, or act"). In *United States v. Lague*, for instance, the defendant was charged with prescribing controlled substances to five patients without a legitimate medical purpose. The government sought to introduce evidence of the defendant's practice-wide prescription data under Rule 404(b), and the district court allowed it in. The Ninth Circuit affirmed, holding that if the defendant's "aberrational prescription data is probative of his intent to prescribe the underlying, uncharged prescriptions without a legitimate medical purpose, there [was] a logical connection between the 'other' prescriptions and the charged prescriptions." 971 F.3d at 1038. Notably, the government was not required to prove that these other prescriptions were independently illegal.

1    Like the practice-wide data in *Lague*, and like the evidence of cash transportation in *Ayers*, the

2  evidence offered here is material to show Nubla's intent, regardless of whether it conclusively

3  demonstrates any uncharged criminal conduct. That Nubla's income allegedly tripled between 2015

4  and 2016, and then nearly doubled again between 2016 and 2017, supports an inference that he

5  intended to conceal Brisbane's taxable income and, thus, defraud the United States. *See United States*

6  *v. Sanchez*, No. 21-cr-00238-BLW, 2023 WL 1822562, at *5 (D. Idaho Feb. 8, 2023) (uncharged tax

7  returns, alleged by the government to involve claiming ineligible dependents, deemed "relevant to the

8  issue of whether [defendant] willfully committed tax fraud"); *cf. United States v. Marashi*, 913 F.2d

9  724, 735 (9th Cir. 1990) (evidence subsequent to the indictment period indicating defendant had

10  erased information in a duplicate appointment book allowed under Rule 404(b) to "establish *modus*

11  *operandi* and, ultimately, [defendant's] intent to underreport his medical income"). The government

12  has thus established a logical connection between the evidence presented by the tax returns and

13  Nubla's underlying intent, and the first requirement is therefore met. *See Lague*, 971 F.3d at 1038

14  (quoting *Mayans*, 17 F.3d at 1183).

15    The second requirement being uncontested, as noted above, the parties further dispute whether

16  the evidence meets the sufficiency requirement. The government argues it is, because "Nubla was in

17  control of Brisbane and had the power to grant himself the salary he desired." Dkt. 109, at 10. Nubla,

18  meanwhile, argues that the government's evidence constitutes merely an accusation of wrongdoing. In

19  so doing, Nubla relies on *United States v. Bailey*, which held that the government could not introduce

20  an SEC complaint under Rule 404(b) because it was "insufficient to support a finding that the prior act

21  was committed, and therefore, [did] not tend to prove that the defendant committed the act for which

22  he [was] on trial." 696 F.3d at 802. The problem here is that the government is not relying on a

23  criminal or civil complaint. While it is true that the government's motion basically accuses Nubla of

24  having employed disguised dividends, the underlying pieces of evidence it seeks to use at trial are the

25  tax returns themselves — not a complaint, which is "not proof of anything." *United States v.*

26  *Thompson*, 606 F. Supp. 3d 1066, 1071 n.2 (W.D. Wash. 2022) (distinguishing *Bailey* on the grounds

27  that the government was "seek[ing] to introduce proof of the events in question," rather than a

28

United States District Court
Northern District of California

ORDER ON MOTIONS *IN LIMINE*
CASE NO. 21-cr-00139-RS

6

complaint). More broadly, the Ninth Circuit has noted there is a "low threshold test of sufficiency" such that "the government 'need not prove Rule 404(b) evidence by a preponderance of the evidence.'" *Lague*, 971 F.3d at 1040 (first quoting *United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004) (cleaned up); and then quoting *Bailey*, 696 F.3d at 799). The requirement focuses generally on the limited question of whether the evidence sufficiently shows that the defendant committed the alleged act — not what the act itself tends to prove. *E.g.*, *Ayers*, 924 F.2d at 1473; *United States v. Yamukian*, 25 Fed. App'x 522, 525 (9th Cir. 2001). As the jury could readily conclude that Nubla granted himself the wages listed on the tax returns, the sufficiency requirement is met.

Fourth, the tax returns evince conduct similar to the offenses charged, contrary to Nubla's argument that the tax returns show nothing resembling the conduct included in the Superseding Indictment. *See* Dkt. 117, at 6. To the extent the tax returns may be used to show an intent to evade federal taxes by altering Brisbane's reported income, this is certainly similar to the charged conduct, albeit not identically so. In any event, the Ninth Circuit simply requires that "the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *United States v. Rodriguez*, 880 F.3d 1151, 1167 (9th Cir. 2018); *accord Sanchez*, 2023 WL 1822562, at *5. The similarity requirement is therefore met.

Finally, the evidence is not so prejudicial as to warrant exclusion under Rule 403. To address Nubla's concerns that the jury would "inevitably be confused" by the introduction of these tax returns, or that the government may seek to use this evidence only to "brand Nubla a tax cheat" based on "completely different" and uncharged conduct, Dkt. 117, at 8, the government will be prohibited from referring to the increased wages reflected in the tax returns as "disguised dividends," as this would reflect a legal conclusion the government has not proven. Nubla may, of course, challenge the probative value of the tax returns through cross-examination of the government's witnesses or by rebutting the evidence in his case-in-chief, should he choose to present one. Furthermore, limiting instructions are appropriate here to advise the jury to consider this evidence only insofar as it is probative of the Nubla's intent to commit the underlying, charged offenses. *E.g.*, *United States v.*

*Daraio*, 445 F.3d 253, 257 (3d Cir. 2006). With these conditions, the motion is granted.[3]

### 5.   MIL No. 5: Limitations on Opening Statement

The government moves *in limine* to limit all parties' opening statements to exclude any statements containing facts that "counsel does not reasonably anticipate will be introduced at trial." Dkt. 109, at 10. Neither defendant opposes the motion. While the motion is unnecessary given that this is an "axiomatic" principle of federal criminal trial practice, *id.*, it will be granted.

### 6.   MIL No. 6: Limitations Relating to Ku's Self-Representation

The government moves *in limine* to preclude defense counsel from suggesting, at any point, that Ku is at a disadvantage because he is representing himself. Neither defendant opposes the motion. This motion is unnecessary in light of the intended preliminary jury instructions, and it accordingly will be denied.

### 7.   MIL No. 7: Exclusion of Unproduced Evidence

The government moves *in limine* to preclude the defendants from relying on any evidence that "could have been, but was not, produced in discovery and added to Defendants' exhibit lists." Dkt. 109, at 12. This motion is based on what the government claims to be only meager reciprocal discovery received from either Defendant, and it seeks to prevent "last-minute production" of evidence at trial. *Id.* at 13. Nubla argues that he has not yet determined the evidence he intends to rely on in his own defense, but states that he will meet his disclosure obligations if and when he decides to put on a case-in-chief. Ku joins in Nubla's argument.

Rule 16(b) requires that a criminal defendant provide reciprocal discovery of any evidence that the defendant intends to use in his case-in-chief at trial. Fed. R. Crim. P. 16(b)(1). While the Rule does

---

[3] At oral argument, Nubla argued the government had provided inadequate notice of its intent to rely on these tax returns, and that it was now seeking to do so on the eve of trial. This claim is without merit. For one, the government filed its MILs on January 5, 2023 — over two months ago. This was sufficient to put Defendants on notice of the possibility that the government would seek to use this evidence, and it plainly satisfied the government's disclosure obligations under the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 404(b)(3). Further, the government is not seeking to rely on eleventh-hour evidence: the tax returns have been in Nubla's possession presumably for years. Nor was it unpredictable that the government would seek to admit these returns, since this entire case involves tax evasion charges.

United States District Court
Northern District of California

not impose a disclosure deadline in advance of trial, Criminal Local Rule 17.1-1 contemplates

disclosure of witness and exhibit lists, by both the government and the defense, ahead of the pretrial

conference. *See* Crim. L.R. 17.1-1(b). Even if this does not occur, as in this case, Rule 16(d) provides

other remedies besides the full exclusion the government seeks here. Accordingly, the motion is

denied. However, Defendants are ordered to disclose and produce any substantive, non-impeachment

evidence, as discussed in Rule 16(b), no later than one week before the start of trial. *See United States

v. Aiyaswamy*, No. 15-cr-00658-LHK-1, 2017 WL 1365228, at \*5 (N.D. Cal. Apr. 14, 2017).

**8.   MIL No. 8: *Henthorn*-Type Inquiries**

The government moves *in limine* to require the defendants to have a good-faith basis for

making any inquiries into "alleged misconduct by any of the government's testifying law-

enforcement witnesses." Dkt. 109, at 13. Neither defendant opposes this motion, and Nubla asserts

that he will "work with the government to agree to make an offer of proof on any such issue

outside the presence of the jury." Dkt. 117, at 13. The motion is granted.

**9.   MIL No. 9: Litigating Suppression Issues**

The government moves *in limine* to preclude the defendants from "litigating, in front of the

jury," any issues regarding, e.g., the suppression of evidence. Neither defendant opposes this

motion, and, as with MIL No. 8, Nubla asserts that he will "work with the government to agree to

make an offer of proof on any such issue outside the presence of the jury." Dkt. 117, at 13. The

motion is granted.

**IT IS SO ORDERED**.

Dated: March 9, 2023

_____

RICHARD SEEBORG
Chief United States District Judge