UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH NUBLA and HENRY KU,

Defendants.

Case No. 21-cr-00139-RS

**ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL**

# I. INTRODUCTION

Defendants Joseph Nubla and Henry Ku were jointly charged in the operative Superseding Indictment with conspiring to defraud the United States by obstructing the lawful functions of the Internal Revenue Service ("IRS") in assessing and collecting income taxes in violation of 18 U.S.C. § 371. Nubla was separately charged with tax evasion in violation of 26 U.S.C. § 7201. After a nine-day trial, commencing on March 27, 2023, the jury deliberated for about six hours and returned guilty verdicts on all counts. In separate filings, Defendants renew their respective motions for judgments of acquittal under Federal Rule of Criminal Procedure 29. They each move in the alternative for new trials under Federal Rule of Criminal Procedure 33. For the reasons discussed below, the motions are denied.

# II. LEGAL STANDARD

**A. Rule 29 Motion for Judgment of Acquittal**

Rule 29 requires the court, on the defendant's motion, to "enter a judgment of acquittal of

any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering a motion for judgment of acquittal under Rule 29, the evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in the government's favor. *United States v. Niebla-Torres*, 847 F.3d 1049, 1054 (9th Cir. 2017). In doing so, the court may not view the government's evidence in isolation, but must examine the evidence as a whole. *See United States v. Stanton*, 501 F.3d 1093, 1100 (9th Cir. 2007). By the same token, "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) (quoting *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977)).

"[A]fter viewing the evidence in the light most favorable to the government," the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Cordova Barajas*, 360 F.3d 1037, 1040 (9th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The question "is not whether the evidence excludes every hypothesis except that of guilt but rather whether the trier of fact could reasonably arrive at its conclusion." *United States v. Nevils*, 598 F.3d 1158, 1165 (9th Cir. 2010) (en banc) (quoting *United States v. Eaglin*, 571 F.2d 1069, 1076 (9th Cir. 1977)). As such, if a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt, the motion must be denied. *See id.* at 1164.

**B.  Rule 33 Motion for New Trial**

Rule 33 permits the court to "vacate a judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal," and the court may thus weigh the evidence itself and judge the credibility of witnesses. *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992). However, Rule 33 motions are generally disfavored and should only be granted in "exceptional" cases. *United States v. Del Toro–Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012) (citing *United States v. Pimentel*, 654 F.2d 538, 545

(9th Cir. 1981)). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is a real concern that an innocent person may have been convicted." *United States v. Halali*, No. 14-cr-00627-SI-1, 2017 WL 3232566, at *2 (N.D. Cal. July 28, 2017) (quoting *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009)); *cf. United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989) (defendant carries a "significant burden" to show district court abused discretion in denying new trial). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (quoting *Alston*, 974 F.2d at 1211–12).

## III. DISCUSSION

### A. A Judgment of Acquittal Is Not Warranted for Nubla

The bulk of Nubla's Rule 29 motion is dedicated to attacking the government's reliance on circumstantial rather than direct evidence. He argues the circumstantial evidence here was insufficient either to overcome his defense of good-faith reliance on tax preparer advice or to establish a criminal agreement to defraud the IRS. In addition, he contends one of the government's witnesses established reasonable doubt by providing erroneous testimony. None of these arguments support entering a judgment of acquittal.

*1. Lack of Direct Evidence*

Nubla argues first that a judgment of acquittal is warranted because there was no direct evidence of his unlawful intent, nor of a criminal plan or agreement between the Defendants. This argument is a non-starter. As explained in Jury Instruction No. 7, "[t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence." Jury Instr. No. 7; *see, e.g.*, *United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000); *United States v. Castro*, No. 219CR00295GMNNJK, 2023 WL 4052429, at *4 (D. Nev. June 15, 2023). Indeed, both unlawful intent and the formation of a conspiracy can often be proven only via circumstantial

evidence. *See, e.g.*, *United States v. Conforte*, 624 F.2d 869, 875 (9th Cir. 1980); *United States v. Loveland*, 825 F.3d 555, 557 (9th Cir. 2016). The government was under no requirement (statutory or otherwise) to present direct evidence of the crimes alleged, and any failure to do so is legally inconsequential.

    2. *Insufficient Circumstantial Evidence to Overcome Defense of Good-Faith Reliance on Tax Preparer Advice*

Nubla next attacks the weight of the circumstantial evidence, contending first that it was insufficient to overcome his defense of good-faith reliance on his tax preparers (namely, Calvin Louie and Joe Navolio). He suggests the relevant circumstantial evidence consisted of "Brisbane's lack of invoices for payments to Mr. Ku's companies, Brisbane's decision not to engage Calvin Louie's audit services, Brisbane's lack of taxable income from 2009 to 2014, [his own] increased compensation starting in 2015, and Mr. Ku's failure to record the heavy equipment on his unindicted companies' balance sheets." Dkt. 192 ("Nubla Mot."), at 12. None of this, Nubla argues, fatally undermines his point that the tax preparers were aware of his and Brisbane's income and "failed to alert [him] to any problems." *Id.* at 13. On the contrary, all of the transactions salient to the conspiracy alleged in Count One were recorded in Brisbane's accounting software and provided to Calvin Louie, and Joe Navolio was made equally aware of Nubla's personal compensation.

Nubla's position on this front is unconvincing. As provided by the jury instructions, good-faith reliance on the advice of a tax preparer negates a defendant's unlawful intent only if he (1) "made full disclosure of all material facts to a tax preparer," (2) "received the tax preparer's advice as to the specific course of conduct that was followed," (3) "reasonably followed the tax preparer's recommended course of conduct or advice in good faith," and (4) "filed the tax return as prepared by the tax preparer without having reason to believe that it was not correct." Jury Instr. No. 16. A rational jury could readily have found any one or more of these elements unsatisfied. For instance, a jury could have found that Nubla's failure affirmatively to provide Mr. Louie with additional documentation concerning the equipment purchases facilitated by Pegasus, *see* Trial Tr.

1033:15–17, or that his decision not to inform Joe Navolio of the $3 million check from Ku dated January 20, 2015, *see id.* at 795:25–796:2, undermined the notion that he "made full disclosure of all material facts." The jury alternatively (or additionally) could have found that using Mr. Louie's and Mr. Navolio's tax preparation services was not equivalent to seeking their advice on any "specific course of conduct."[1] Defendant's sole reliance on *United States v. Pechenik*, 236 F.2d 844 (3d Cir. 1956), a 65-year-old Third Circuit case, fails to persuade. Since the jury was entitled to reject Nubla's good-faith reliance defense, this argument does not support entry of a judgment of acquittal.

> 3. *Insufficient Circumstantial Evidence to Establish Criminal Agreement with Intent to Defraud the IRS*

Next, Nubla claims the government's circumstantial evidence was generally insufficient to establish a criminal agreement with the intent to defraud the IRS. He argues the circumstantial evidence proffered by the government (namely, "the payments from Brisbane to Pegasus and JPM . . . , those companies' subsequent purchases, and transfers and loans from Mr. Ku's companies to Mr. Nubla") in no way proved an intent to defraud the IRS. Nubla Mot. at 14. Rather, there could have been "myriad reasons why Brisbane and Mr. Ku engaged in those transactions." *Id.* Yet the fact that inferences favorable to Nubla could also be drawn from this evidence is of no import on a Rule 29 motion, because "the task of choosing among permissible competing inferences is for the jury, not a reviewing court." *United States v. Salmonese*, 352 F.3d 608, 618 (2d Cir. 2003). Here, a rational jury could view the available circumstantial evidence — including the $18 million in checks between Nubla and Brisbane on the one hand, and Ku and his entities on the other — as

---

[1] In his Reply Brief, Nubla assails the government for inventing a "'sophisticated transactions' standard whereby (apparently) only those who have engaged in 'sophisticated transactions' are deemed to have received tax advice." Dkt. 196, at 2. This is a curious line of attack. The portion of the government's brief that Nubla criticizes more fairly reads as a counterexample, not a standard. The government's point is not that "advice from one's CPA only counts when it concerns 'sophisticated' matters," *id.*, but that neither Mr. Louie nor Mr. Navolio provided any advice at all. *E.g.*, Dkt. 194, at 13 ("Mr. Louie was just filling out the tax forms and not asking questions."). A rational jury could have reached the same conclusion.

1   indicative of an agreed-upon effort to evade paying federal taxes. Alternatively, a rational jury

2   could have found Nubla's theories implausible given, for instance, the absence of invoices for the

3   supposed royalty payments, or the consistent lack of information in Brisbane's QuickBooks

4   entries concerning transactions with Pegasus and JPM. *See* Trial Tr. 547:12–553:8. This argument,

5   then, is similarly unpersuasive.

   *4.  Government Witness's Testimony Supplying Reasonable Doubt*

7   Finally, Nubla argues one of the government's expert witnesses, Revenue Agent Ryan

8   Weitzel, supplied reasonable doubt by suggesting Ku "had no sources of income independent of

9   Brisbane and Mr. Nubla." Nubla Mot. at 15. This is an inaccurate characterization of the witness's

10  testimony. In relevant part, Agent Weitzel testified as follows:

> Logically, if the source of the money came from Mr. Ku from an outside place — inheritance, his own business, savings over his life — and then he then had some separate source of income to total the $18 million that we saw in those 30 checks, a separate 18 million that did not come from Mr. Nubla's company, Brisbane, then I would be inclined to think that we might be considering a gift or a loan. But because the money being given or being lent to the person comes from that person's own company, that's a taxable dividend.

16  Trial Tr. 1328:15–24. This statement alone appears readily susceptible to the interpretation that Ku

17  *may* have had outside income, just not enough to total the $18 million at issue. Nowhere does the

18  record reveal a statement as broad as Nubla suggests: that Weitzel testified that Ku definitively

19  had *no* separate sources of income during the relevant time period. Furthermore, the jury, as

20  instructed, was entitled to "believe everything [Weitzel said], or part of it, or none it." Jury Instr.

21  No. 12. Even if it had disregarded all or part of Agent Weitzel's testimony, there still remained

22  ample evidence from which the jury could find Nubla guilty and conclude his arguments were

23  implausible. Thus, Nubla has not demonstrated that a judgment of acquittal is justified.

   **B. A New Trial Is Not Warranted for Nubla**

25  Nubla moves, in the alternative, for a new trial under Rule 33, and his motion raises three

26  arguments. He contends that (1) the government's focus on Brisbane's compensation of Nubla and

27  his family members was improper; (2) the evidence unfairly implied that Brisbane's lack of

audited financial statements was "tantamount to tax evasion," Nubla Mot. at 18; and (3) the failure to sever Nubla's trial from Ku's deprived Nubla of a fair trial. As with the Rule 29 motion, each of these arguments fails to persuade, and a new trial need not be granted here.

 *1. Evidence of Compensation*

Nubla first revives his argument that his and Brisbane's tax returns from 2016 to 2021 should not have been admitted as Rule 404(b) "other acts" evidence, or otherwise should have been excluded as unfairly prejudicial. The primary thrust of this argument was fully briefed and thoroughly considered in conjunction with the government's fourth motion *in limine*. The analysis of the pretrial order on that motion, *see* Dkt. 134, at 2–7, remains sound. That order concluded that the 2016 to 2021 tax returns satisfied the four-factor test for admissibility under *United States v. Mayans*, 17 F.3d 1174 (9th Cir. 1994), relying on multiple cases involving similar circumstances. Rather than finding the evidence would have no purpose other than to label Nubla a "tax cheat," the order held the tax returns evidenced conduct similar to that charged, which was relevant to prove Nubla's unlawful intent. Finally, while the order found the evidence to be "not so prejudicial as to warrant exclusion under Rule 403," it precluded the government from referring to any increased compensation as "disguised dividends" and suggested a limiting instruction would be appropriate to temper any potential jury confusion. Dkt. 134, at 7. Such a limiting instruction was ultimately adopted, and it read as follows:

> You have seen evidence that the salary and bonus paid to defendant Joseph Nubla by Brisbane Recycling Company, Inc., increased in the tax years 2015 to 2021 relative to the tax years 2009 to 2014. This evidence of other acts was admitted only for a limited purpose. You may consider this evidence only for the purpose of deciding whether Joseph Nubla had the state of mind, knowledge, or intent necessary to commit the crimes charged in the indictment. Do not consider this evidence for any other purpose.

Jury Instr. No. 9.

Nubla further contends the government exceeded the bounds of what was contemplated by the motion *in limine* when it offered evidence of compensation paid to his family members. He argues this evidence was unfairly prejudicial and invited the jury to convict "because they

disapproved of how his sisters were compensated." Nubla Mot. at 17. The primary purpose of introducing Nubla's and Brisbane's 2016 to 2021 tax returns was to show that Nubla's own salary began to "skyrocket starting in 2015." Dkt. 109, at 7; *see also id.* at 9 (noting Nubla "switched to paying himself giant salaries . . . to continue to avoid paying corporate taxes that way"); *id.* at 10 ("Mr. Nubla was in control of Brisbane and had the power to grant himself the salary he desired"). Indeed, the government's motion *in limine* did not contemplate that it would also present evidence of the increased salaries to Nubla's family members, including his sisters.

Yet this observation does not move the needle. Like all motions *in limine*, the purpose of ruling on the government's motion was to "make a threshold determination of the admissibility of specific evidence," in this case the admissibility of the 2016 to 2021 tax returns to prove Nubla's intent. *Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, No. 20-cv-03444-MEMF-PVC, 2023 WL 4763224, at *2 (C.D. Cal. June 29, 2023). The pretrial order did not expressly forbid the government from presenting evidence of compensation to Nubla's family members, nor did it expressly cabin the use of this evidence only to issues regarding Nubla's personal compensation. The use of the returns for such other purposes simply was not contemplated there. Once the government's direct examinations ventured into territory outside the scope of the motion *in limine*, however, the defense failed to object. Not only that, during its own case, the defense elicited testimony from Nubla's sister, Elizabeth Nubla-Penn, regarding her and her sister's compensation from Brisbane. *See* Trial Tr. 1575:9–1577:14. The defense similarly did not suggest any revisions to the proposed limiting instruction, recited above, that would have encompassed this evidence. Thus, to the extent any of this evidence had a prejudicial impact on the jury (and it is not evident that it did), the defense did not take any steps to mitigate it. *Cf. United States v. Rakow*, No. CR 04-01563 MMM, 2007 WL 9751572, at *8 n.11 (C.D. Cal. Jan. 12, 2007) ("The court will not save a defendant from his own litigation strategy when he deliberately chooses not to object to erroneous evidence and subsequently tries to capitalize on the evidence by highlighting it in his closing argument."). Finally, while Nubla also argues the government's closing statements improperly relied upon the same evidence, the government notes persuasively that such statements

were made in response to the defense having "opened the door" to the subject of Nubla's generosity. *See United States v. Falsia*, 724 F.2d 1339, 1342–43 (9th Cir. 1983). In light of this, the introduction of evidence of Nubla's post-2016 compensation, and that of his family members, does not warrant granting a new trial.

*2. Brisbane's Lack of Audits*

Nubla next argues that the government's repeated references to Brisbane's lack of audits was irrelevant and prejudicial, as it permitted the government effectively to argue that he should be convicted for failure to pay for audits, rather than because all the required elements were met. This is similar to an argument raised and rejected in Nubla's motion *in limine*, in which he sought to preclude Agent Weitzel from testifying about Generally Accepting Accounting Principles ("GAAP") for essentially the same reason. The pretrial order denying that part of the motion noted that the government was "not seeking to imply Brisbane had an obligation to follow GAAP writ large." Dkt. 143, at 1. That is consistent with the evidence that was received in trial. While the government certainly referenced the lack of audits for Nubla's and Brisbane's financials, it did not argue either were required to undergo audits. Rather, this evidence was relevant to rebut Nubla's assertions that he had made full disclosure to his tax preparers and that he had received advice as to a specific course of conduct. Further, as the government points out (and Nubla essentially concedes), the defense made clear during cross-examination that companies like Brisbane were not required to undergo audits. *E.g.*, Trial Tr. 948:22–949:8; Nubla Mot. at 13 ("Mr. Louie testified that he never suggested that an audit was necessary, and, indeed, multiple witnesses testified that companies of Brisbane Recycling's size are not required to conduct audits." (citing trial transcript)). Thus, this argument also fails to show that a new trial is warranted.

*3. Failure to Sever Trials*

Finally, Nubla revives another pretrial argument and suggests that the failure to sever his trial from Ku's denied him of his right to a fair trial. He claims his "worst fears were borne out" through the joint trial, as the jury must have "view[ed] the evidence through the lens of Mr. Ku's performance," in particular the fact that Ku did not mount "a full-throated defense." Nubla Mot. at

10, 21. While Nubla indeed moved to sever the trials, his motion was built on premises very different from what he now relies on and from what actually transpired. In the pretrial motion, Nubla argued that severance was necessary because the jury would "face the impossible task not only of compartmentalizing the evidence against each defendant, but also separating and considering in isolation — and only for select purposes — their impression of Mr. Ku" in his roles as a co-conspirator, Nubla's former lawyer and business partner, a potential witness, and a courtroom advocate. Dkt. 75, at 5–6. Most problematically, Nubla raised the specter of Ku having "the bizarre opportunity to question Mr. Nubla himself." *Id.* at 6. While the case presented a "highly unusual" situation, Dkt. 94, at 3, the motion was denied under the criteria laid out in *United States v. Hernandez-Orellana*, 539 F.3d 994 (9th Cir. 2008). The pretrial order concluded that Nubla's fears were largely speculative and did not "rise to the level of 'manifest prejudice' such that his right to a fair trial [would] be abridged." Dkt. 94, at 5. It noted that none of Nubla's concerns outweighed the interest in promoting judicial efficiency and that limiting instructions could be used to help the jury parse out Ku's different roles; it also kept the door open to reviving the motion to sever if "events at trial more firmly establish[ed]" the need to do so. *Id.* at 5 n.1.

It's fair to say events at trial did not track with Nubla's predictions, and it is a stretch to conclude that his stated "worst fears" materialized. Rather than acting as a second prosecutor, Ku made nary a peep between voir dire and closing arguments — as was his right. Even then, the jury was instructed that Ku was "acting as a lawyer in this case," and any questions, objections, and arguments he made were not to be considered evidence. Jury Instr. No. 6. Despite the invitation to do so, Nubla also did not renew his motion to sever at trial. Nubla's argument that Ku's performance unfairly prejudiced him is therefore unpersuasive, and the decision to try both defendants jointly does not compel a new trial to be granted here.

**C. Neither a Judgment of Acquittal nor a New Trial Is Warranted for Ku**

While Ku filed separate Rule 29 and Rule 33 motions, he generally joins the arguments raised in Nubla's motions. To the extent Ku incorporates those arguments by reference, they must be rejected for the same reasons expressed above. Beyond this, Ku makes the separate argument

ORDER DENYING RULE 29 AND RULE 33 MOTIONS
CASE NO. 21-cr-00139-RS

10

that he is entitled either to a judgment of acquittal or a new trial because "no reasonable jury could have found [he] did not withdraw" from the conspiracy before June 20, 2016. Dkt. 193 ("Ku Mot."), at 3. This appears to stem from the requirement that "one of the members of the conspiracy performed at least one overt act on or after April 6, 2015 for the purpose of carrying out the conspiracy." Jury Instr. No. 18. Ku cites three instances — in May 2015, December 2015, and March 2016 — that, he claims, definitively proves he withdrew.

This argument must be rejected. For one thing, it is simply not the case that, as Ku suggests, "[a]ny overt act after April 6, 2015 only matter[ed] for the next tax year, June 20, 2016." Ku Mot. at 3. Rather, as the government suggests, overt acts such as the April 15, 2015 money transfer from Ku to Nubla could still reasonably be considered "in furtherance of the conspiracy," even though they occurred after April 6, 2015. Given the available evidence, a rational jury could have concluded such overt acts occurred, and that same jury could have rejected Ku's argument that he withdrew before those dates. This argument thus fails to persuade, and Ku's motions must be denied considering the weight of evidence as a whole.

## IV. CONCLUSION

Defendants' Rule 29 and Rule 33 motions are denied.

**IT IS SO ORDERED**.

Dated: August 11, 2023

RICHARD SEEBORG
Chief United States District Judge